# IN RE NATALIA G.*
## (AC 18756)

Landau, Spear and Hennessy, Js.

Argued March 15—officially released September 14, 1999

---

\* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Scott Allan Sandler*, for the appellant (respondent father).

*Paula D. Sullivan*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Opinion*

HENNESSY, J. This is an appeal by the respondent father[1] from the judgment of the trial court terminating his parental rights with respect to his daughter, Natalia G., pursuant to General Statutes (Rev. to 1997) § 17a-112. On appeal, the respondent claims that the trial court improperly (1) found that the department of children and families (department) made reasonable efforts to reunify the respondent with Natalia, (2) found that the respondent had failed to achieve personal rehabilitation within the meaning of General Statutes (Rev. to 1997) § 17a-112 (c) (3) (B), and (3) made mandatory findings, pursuant to General Statutes (Rev. to 1997) § 17a-112 (e), now § 17a-112 (d), that were factually incorrect and legally unsupported. We affirm the judgment of the trial court.

The following facts are relevant to our disposition of this appeal. Natalia was born on August 4, 1994. On October 23, 1996, she was removed from the care of her parents and placed in the care of the department under an order of temporary custody. On March 7, 1997, having been found to be a neglected child, Natalia was committed to the department for a period of up to

---

[1] The trial court terminated the parental rights of both the respondent mother and the respondent father. The respondent mother has not appealed from that decision. We refer in this opinion to the respondent father as the respondent.

twelve months. The commitment to the department was later extended on January 14, 1998. Thereafter, a petition to terminate the parental rights of both parents was filed on March 11, 1998, and was granted on July 22, 1998, on the statutory ground of failure to rehabilitate. It is from this judgment that the respondent appeals.

I

The respondent first claims that the trial court improperly found that the department made reasonable efforts to reunify him with Natalia. Specifically, the respondent claims that because he was twenty-two years of age and drug-dependent, and without appropriate and meaningful assistance, he could not have hoped to meet the court expectations or to take advantage of related department services. We disagree.

"On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) *In re Marvin M.*, 48 Conn. App. 563, 577–78, 711 A.2d 756, cert. denied, 245 Conn. 916, 719 A.2d 900 (1998).

General Statutes (Rev. to 1997) § 17a-112 (e) requires in relevant part that the trial court "consider and shall make written findings regarding: (1) [t]he timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent . . . ." In its memorandum of decision, the trial court found that "[a]ppropriate and timely services were provided by the department, including substance abuse and individual counseling, transportation assistance

and visitation coordination . . . [and] that the [department] made reasonable efforts to reunify the family, given the situation and circumstances, as far as possible."

Our review of the record shows that from the time the child was placed in the care of the department in October, 1996, until February, 1997, the department was not aware of the respondent's whereabouts, despite the fact that the trial court had ordered the respondent to keep the department apprised of his address. During March, 1997, the respondent failed to keep three successive appointments with Catholic Family Services, arranged by the department, for the assessment and treatment of his drug problem. Thereafter, in April, the respondent missed a portion of a court-ordered psychological evaluation that assessed parent-child interaction. In June, during an evaluation by Catholic Family Services to develop an appropriate course of action for his substance abuse, the respondent tested positive at the highest level for cocaine and heroin. In response to the positive drug test, Catholic Family Services informed the respondent that he needed inpatient treatment, that it would refer him to such a program and advised him to contact Blue Hills Hospital for intensive treatment. In the following months until October, 1997, however, the respondent made no effort to contact Catholic Family Services or the department in order to participate in any program. Furthermore, during this same period, the respondent did not inquire about or visit his daughter.

We cannot conclude, as the respondent urges, that the department is at fault for not finding a way to force him to accept treatment and to visit his daughter. After a review of the record and briefs, we cannot say that the finding of the trial court that the department made reasonable efforts to reunify the respondent with his daughter was not legally correct or factually supported.

## II

The respondent next claims that the trial court improperly found that he failed to achieve sufficient personal rehabilitation within the meaning of General Statutes (Rev. to 1997) § 17a-112 (c) (3) (B).[2] We disagree.

"Personal rehabilitation as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent. . . . Our Supreme Court has held that General Statutes (Rev. to 1989) § 17-43a (b) (2) [the predecessor to § 17a-112] requires the trial court to analyze the respondent's rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time. . . . A determination by the trial court under [§ 17a-112 (b) (2)] that the evidence is clear and convincing that the parent has not rehabilitated [himself] will be disturbed only if that finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous. . . . *In re Christina V.*, 38 Conn. App. 214, 220–21, 660 A.2d 863 (1995)." (Internal quotation marks omitted.) *In re Marvin M.*, supra, 48 Conn. App. 578.

The trial court found by clear and convincing evidence that the child previously had been adjudicated neglected and uncared for on March 7, 1996, and that since that date, the respondent had failed to achieve

[2] General Statutes (Rev. to 1997) § 17a-112 provides in relevant part: "(c) The Superior Court, upon hearing and notice as provided in sections 45a-716 and 45a-717, may grant a petition filed pursuant to this section if it finds by clear and convincing evidence . . . (2) that termination is in the best interest of the child, and (3) that . . . (B) the parent of a child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

such degree of rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, he could assume a responsible position in her life. The court found that this situation had existed for more than one year.

On October 23, 1996, Natalia, who was then two years of age, was found with her parents living in an unoccupied, boarded up, burned out funeral home. After being taken to a hospital, the child was placed in the custody of the department and has been in a foster home ever since.

The respondent readily admits that he is in need of treatment for his drug addiction, and that his age and immaturity contributed to his inability to meet the expectations of the trial court that he pursue a lifestyle that would enable him to take custody of his daughter. He claims, however, that he never was given the opportunity to do so in the absence of offers of appropriate and timely service, and it therefore is mere conjecture to find that he would not have achieved a certain degree of personal rehabilitation had such offers been made. The facts, however, indicate otherwise.

The respondent, because of drug-related problems, spent time in jail, which made him unavailable to visit his daughter, and unavailable to Catholic Family Services and the department.[3] When he was not in jail, his drug addiction prevented him from regularly keeping appointments for visitation with his daughter and with those who were attempting to address his drug problem. The respondent also failed to meet the expectations set by the trial court in connection with the neglect adjudication. Moreover, he has failed to make this court aware of the methods that he believes the department

---

[3] Both agencies were unaware of his incarceration. In addition, the respondent was in jail at the time the petition for termination of parental rights was filed.

should have used to provide appropriate programs for him, when he did not make the department aware of his whereabouts or appear for appointments as required. For the forgoing reasons, we cannot conclude that the trial court's determination that the respondent has failed to achieve rehabilitation was clearly erroneous.

## III

The respondent claims finally that the trial court's findings as required by General Statutes (Rev. to 1997) § 17a-112 (e)[4] were not legally correct or factually supported. The respondent maintains that the failure of the department to provide him with adequate drug counseling and programs was the reason underlying his

[4] General Statutes (Rev. to 1997) § 17a-112 (e) provides: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to his parents, any guardian of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust his circumstances, conduct, or conditions to make it in the best interest of the child to return him to his home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

inability to meet the expectations of the court and the cause of his having missed appointments to visit his daughter and meet with Catholic Family Services and the department. He argues that if the department had placed him in an inpatient drug program, the trial court would not have been able to make the findings it did. We cannot fault the department for not being able to deliver services to the respondent when he failed to inform the department of his whereabouts and failed to appear for appointments as required by the trial court. Furthermore, it is not the department's responsibility forcibly to commit the respondent to an inpatient drug treatment program, nor does it have the ability or authority to do so, which appears to be what he is claiming the department should have done. We therefore conclude that the trial court's findings were legally correct and supported by the record as required by the statute.

The judgment is affirmed.

In this opinion the other judges concurred.